O’Neall J.
delivered the opinion of the Court.
On the first ground, it may be remarked, that if Veil had been present, and sworn, it could not have been questioned that he was competent to prove that the deed of gift did bear its true date; and that his statements that it did not, would have been equally competent to contradict him. The proof of his hand-writing, after his death, established the deed as a true and genuine paper; on presumptions: 1st, that' if it had not been so, he would not have witnessed it; and 2d, that if he had been alive, he would have given all the evidence necessary to support it. These, however, are only legal conclusions, from the fact of his death, and proof of his hand-writing. They may, therefore, be rebutted. To do this, nothing can be more satisfactory than to shew, that the witness himself had said, although I have witnessed the deed, yet I know it does not bear its genuine date; but was antedated to save the property. This is in effect a contradiction of the testimony which the law presumes him to give. 2 Stark. Ev. 4 part, 462-3. Wright v. Littler, 3 Burr. 1244. It is true, that without the deed, the parol gift was abundantly proved: yet it is *130 possible that the jury predicated their verdict solely on the deed ; or the evidence of the deed’s being antedated might have satisfied them, that both the deed and gift were fraudulent. Where competent testimony is excluded, and the Court cannot see that it ,ni, could have had no effect on the verdict, anew trial must be granted.
Secondly, The testimony offered to shew that the donor had given other slaves to his other children, was surely competent in a question, where his ability to give depended so much on the relative value of his property to the amount of his debts. The ingenious counsel for the defendant stated, that his verdict was the result of a stated account between James J. Sutton and the world, as to the value of his property, and the amount of his debts. In order then, to ascertain how much he was worth, it was surely necessary to shew how much of the property in his hands he had given away, before hé made the gift to the defendant. But I presume whatever gifts he did make, might have been subsequent to the gift to the defendant: Still the evidence was admissible, for the purpose of shewing the intention in making the first gift.
To establish fraud, it is all important to shew, that the donor has given away so much of his property as to jeopardize the payment of his debts. In other words, that he has not been just, before he was generous. To do this, the creditors, or purchasers under their executions, must be allowed to shew, how much of his estate he has given away: and then if it should appear that this, taken in connexion with the rest of the case, makes out satisfactory proof that he could not have given, but with a view to provide for his children at the expense of his creditors, the gift must fail.
As to the third ground, it is now settled, that a slight indebtedness, such as for the current expenses of a family, or debts which are inconsiderable in comparison with the value of the donor’s property, will not vitiate a gift. Hudnall v. Teasdale, 1 M’C. 228. Hudnall v. Wilder, 4 M’C. 294. So too, if the donor at the time of the gift is indebted, but subsequently pays his debts, and is entirely free from debt, then such antecedent indebtedness cannot vitiate the gift: lb. But if the old debts are paid off by creating new ones, or they remain until out of the general wreck of the donor’s estate, they are paid off on account of their priority; then, I apprehend, the gift is equally as fraudulent, as if to ensure their payment it was necessary to be *131 set aside. For in the first part of the proposition the original indebtedness was the cause of the subsequent; and in the second the antecedent debts, by being paid out of the fund common to both, deprive the subsequent or junior debts of all chance of being paid, unless the antecedent indebtedness, as to which the gift is bad, makes it also void as to subsequent creditors.
' In this case Mr. Sutton was indebted at the time of the gift, to more than one half of the value of his whole estate. These debts were probably never paid, until paid out of the sale of the whole of his estate. The donor was not, from the gift, to his death, ever free from debt. Under these circumstances, I should think the gift could not prevail, notwithstanding the sale of the slave was not necessary to pay the debts due by the donor at the time of the gift. The motion for a new trial is therefore granted.